OPINION
{¶ 1} Defendant-appellant, Craig R. Anderson, appeals from his conviction in the Butler County Court of Common Pleas for aggravated murder. Appellant contends that the trial court erred in refusing to instruct the jury on the lesser-included offense of reckless homicide and that his conviction is against the manifest weight of the evidence. We affirm the decision of the trial court.
 {¶ 2} On May 11, 2004 appellant held the victim, Chad Michael Re, at gunpoint in appellant's home. Believing Re had stolen money and a motorcycle from him, appellant ordered Re into the basement of the house, ordered him to his knees and then to the floor, where he shot Re in the back of the neck. Re later died from the injury. Appellant was interviewed by the Butler County Sheriff's Office on two occasions and maintained that the gun had accidentally gone off when he shot Re.
 {¶ 3} Appellant was indicted on May 19, 2004 and on June 12, 2005 a jury found appellant guilty of one count of aggravated murder, one count of murder, one count of kidnapping, one count of complicity to tampering with evidence, and one count of unlawful possession of a dangerous ordnance. On June 15, 2005, appellant was sentenced to life without the possibility of parole for the offense of aggravated murder with an additional consecutive term of three years for the gun specification, a consecutive term of ten years for the offense of kidnapping, a consecutive term of five years for the offense of complicity to tampering with evidence, and a consecutive term of 12 months for the offense of unlawful possession of a dangerous ordnance. Appellant filed this timely appeal citing two assignments of error.
 {¶ 4} Assignment of Error #1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT REFUSED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF RECKLESS HOMICIDE."
 {¶ 6} Appellant contends that the trial court erred in denying appellant's request for a jury instruction on the lesser included offense of reckless homicide, arguing that the evidence did not support a finding that appellant acted purposely, but only recklessly.
 {¶ 7} In count one of the indictment, appellant was charged with aggravated murder under R.C. 2903.01(B). That section provides, in relevant part, that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit * * * kidnapping." R.C. 2903.01(B). A person acts purposely "when it is his specific intention to cause a certain result." R.C. 2901.22(A). At the close of evidence and after closing arguments, the court charged the jury, under count one, on the offense of aggravated murder and on the lesser included offenses of murder[1] and involuntary manslaughter.[2]
 {¶ 8} Appellant argues that the trial court erred in refusing to instruct the jury on a third lesser included offense, reckless homicide. R.C. 2903.041, defining the offense of reckless homicide, provides, "[n]o person shall recklessly cause the death of another." A person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result." R.C. 2901.22(C).
 {¶ 9} An offense is considered to be a lesser included offense of another if "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205,209. Reckless homicide is a lesser included offense of aggravated murder. State v. Teets, Pickaway App. No. 02CA1, 2002-Ohio-6799, ¶ 29-32. Reckless homicide is an inferior degree offense with a lesser penalty and is distinguished from aggravated murder by requiring a mens rea of only recklessness rather than purpose. Id. at ¶ 30. Additionally, establishment of the offense of reckless homicide does not require a finding that the person was committing or attempting to commit kidnapping.
 {¶ 10} However, a party is not entitled to an instruction on a lesser included offense unless "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v.Blanton, Madison App. No. CA2005-04-016, 2006-Ohio-1785, ¶ 32 (finding, under plain error analysis, that appellant was not entitled to instruction on assault as lesser included offense of felonious assault), citing State v. Conway, 108 Ohio St.3d 214,2006-Ohio-791. In making this determination, the court must view the evidence in a light most favorable to a defendant. Id., citing State v. Smith (2000), 89 Ohio St.3d 323, 311.
 {¶ 11} Further, the Ohio Supreme Court has explained that instruction on lesser included offenses is not warranted every time "some evidence" is presented to support the inferior offense. State v. Shane (1992), 63 Ohio St.3d 630. There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sic.) Id. at 632-633. Thus, in order for the court in this case to have instructed the jury on reckless homicide, the evidence at trial must have supported the theory that appellant acted recklessly while not upholding the theory that he acted purposely when he shot Re. See State v. Jackson, Butler App. No. CA2001-10-239, 2002-Ohio-4705.
 {¶ 12} In Jackson, this court applied that reasoning in upholding a trial court's refusal to instruct on negligent assault. Id. The appellant Jackson testified that he had only fired the gun in order to scare the victim, not to kill him. Id. at ¶ 29-31. On appeal, he argued that the court erred in refusing to instruct the jury to consider the lesser included offense of negligent assault. However, we noted that the only evidence leaning in favor of a charge on negligent assault as a lesser included offense of felonious assault was Jackson's testimony. Id. at ¶ 31. The state had presented significant evidence demonstrating that Jackson had acted knowingly and Jackson's own testimony regarding his actions revealed that he had acted purposely in pulling the trigger on the firearm. Id. at ¶ 29-30. We therefore found that the trial court did not err in refusing to instruct on negligent assault.
 {¶ 13} Similarly, the First District found an instruction on reckless homicide as a lesser included offense of murder unnecessary in State v. Neely, 161 Ohio App.3d 99,2005-Ohio-2342. The court noted that the only evidence supporting the theory that Neely acted recklessly in killing the victim was Neely's own confession to police, in which he had stated that he only intended to scare the victim. Id. at ¶ 46. In contrast, the state had presented sufficient evidence to establish that Neely had acted purposely in shooting and killing the victim. Id. at ¶ 45. The court explained, "even where the defendant offers some evidence through his own testimony supporting a lesser-included offense, he is still not entitled to an instruction on that offense if the totality of the evidence does not reasonably support an acquittal on the greater offense and a conviction on the lesser offense." Id. at ¶ 46; see, also, State v. Walker,
Hamilton App. No. C-030252, 2004-Ohio-4364 (finding reckless homicide instruction not required in light of testimony of three eyewitnesses who stated that appellant deliberately shot victim).
 {¶ 14} In the case at bar, appellant contended that the gun had discharged accidentally and his case rested on the cross-examination of state evidence and state witnesses. The state produced the testimony of Tom Cottle, an eyewitness to the shooting. Cottle testified that on May 11, 2004, he and appellant were driving when appellant received a call from his girlfriend that Chad Re was at appellant's house. Appellant instructed his girlfriend to "keep him there," and then explained to Cottle that they were going to appellant's residence to scare Re. (T.p. 364). Along the way, appellant called the residence to confirm Re was still there. A man named Demetrius Brazile answered the phone and confirmed that Re was in fact there. Appellant then told Brazile to get everyone out of the basement.
 {¶ 15} When appellant and Cottle arrived at appellant's residence, appellant retrieved a .38 pistol and a sawed-off shotgun from his truck. Appellant wrapped the shotgun in a shirt and gave it to Cottle. As appellant and Cottle reached the door of the residence, they met Re. Appellant cocked the hammer on the .38 back and pointed the gun at Re. Appellant ordered everyone else in the residence to go upstairs to the third level and ordered Re to the basement. Appellant yelled obscenities at Re and told Re he wanted his money back. Cottle followed Re and appellant to the basement, where appellant continued to hold his gun to Re's back and ordered Re onto a sofa. Standing in front of Re, appellant continued to yell and argue with Re about the money. Appellant patted Re down and instructed Cottle that if Re should move, to "blow him away." Appellant then pushed Re to his knees on the floor of the basement. Still yelling and waiving the gun, appellant grabbed the back of Re's shirt and pushed Re flat to the floor. Re repeatedly apologized and asked appellant not to shoot him, stating that he would pay appellant whatever appellant wanted. Still leaning over Re, appellant continued to hold Re down by the back of his shirt, calling him obscenities and yelling about the stolen money. Holding the .38 within inches of Re's head, appellant pulled the trigger and shot Re in the back of the neck.
 {¶ 16} Seeing this, Cottle yelled, "It was an accident!" Cottle testified that appellant had been waiving the gun around prior to shooting Re, but that at the time appellant pulled the trigger, his arm was steady. Cottle described what he believed to be an "execution-style murder," and explained that he had stated that it was an accident out of fear that appellant would come after him as the only eyewitness.
 {¶ 17} Re was still alive and was able to get up the stairs and into a bathroom where others in the house helped clean him up and get him redressed. Cottle testified that appellant continued to make statements that he should "finish him off." Cottle also testified that at one point Cottle stepped in front of appellant to stop him, telling appellant that he would have to shoot him (Cottle) first. Appellant eventually gave his gun to others in the house, who emptied the bullets and returned it to appellant. Appellant and Cottle then left the residence, with appellant leaving on his motorcycle and Cottle leaving in appellant's truck.
 {¶ 18} Demetrius Brazile also testified, describing the events surrounding the shooting and what he was able to hear from the upper level of the house. He testified that he heard appellant yelling and arguing with Re, then silence and a gunshot. Brazile was also able to testify that appellant continued to threaten to kill Re while Re was in the bathroom getting cleaned up. Brazile testified that, after appellant and Cottle left the residence, Brazile continued to help get Re cleaned up. Stating that he would take Re to a hospital, Brazile put Re in the back seat of Re's car and had others from the house follow him in another vehicle. Brazile drove Re's car to a nearby auto repair shop and parked. Brazile called 911 and reported that a man with a gunshot wound was parked in a car at the auto repair shop, but then got into the other vehicle and drove away. Re was airlifted to Miami Valley Memorial Hospital but died soon after as a result of injuries from the gunshot wound to the back of his neck.
 {¶ 19} Also among the state's witnesses was Dr. Russell Uptegrove, the forensic pathologist who had performed the autopsy on Re. Dr. Uptegrove was able to describe the nature of the injuries suffered by Re which led to his death. Dr. Uptegrove was also able to testify to the nature of the gunshot wound itself, and to the existence of a relatively small amount of stippling around the wound. Dr. Uptegrove testified to a reasonable degree of medical certainty that the existence of the small amount of stippling around the wound indicated that the barrel of the gun was held one to two inches from Re's neck when he was shot. Dr. Uptegrove's opinion was corroborated by Heather Williams, a forensic scientist with the Ohio Bureau of Criminal Identification (BCI), who testified to a reasonable degree of scientific certainty that the existence of soot and lead surrounding the holes on the collar of the shirt worn by Re when he was shot indicated that the barrel of the gun was in direct contact with the shirt collar when it was fired.
 {¶ 20} Tim Duerr, a forensic scientist specializing in firearms also testified for the state. Duerr explained that he tested the trigger pull weight on the .38 used to shoot Re, testing it four times in single action mode and four times in double action mode. He testified that the trigger had an average pull weight of four-and-one-half pounds in single action mode and an average pull weight of ten pounds, five ounces in double action mode. Duerr explained that these pull weights were within the normal ranges for the type of handgun and that the .38 did not have a light or "hair" trigger.
 {¶ 21} The state's final witness was Det. Rob Whitlock of the Butler County Sheriff's Office. Det. Whitlock interviewed appellant twice during the investigation into Re's death, and both interviews were audio taped. Det. Whitlock testified that prior to giving the first taped statement, appellant was describing the shooting and stated that he had Re flat on the floor and was going to show him some "Chicago-style mafia shit." The state then played the interview tapes for the jury. In the first interview tape, appellant described the shooting and stated that he had the gun to Re's head when Re moved to grab the gun. He then stated that he hit Re in the head with the gun and that the gun went off by accident. Later in the same interview, appellant stated that he was standing over top of Re who was flat on the floor of the basement, and that he told Re that if Re did not tell him what he wanted to hear that he would "send [him] to hell." Appellant also stated that Re was "crying like a bitch" and begging for his life. Appellant then stated that Re reached back for the gun, that appellant hit Re on the shoulder and the gun went off. Appellant then requested that Det. Whitlock turn off the recorder. Det. Whitlock testified that after the recorder was turned off, appellant asked what he would be charged with. Det. Whitlock testified that he then told appellant that Re was dead, and that he would be charged with murder. Det. Whitlock testified that appellant paused and then replied, "I can live with that." (T.p. 648).
 {¶ 22} In the second taped interview, appellant again described the events surrounding the shooting. Appellant stated that as he and Cottle arrived at the residence, Re was walking out. Appellant stated that he cocked the hammer on the handgun back and ordered Re back inside the house and down to the basement. He stated that he ordered Re to lie flat on the floor of the basement. Appellant also stated that he told Cottle to "waste him if he fucking moves," and that he patted Re down to search him for weapons. Appellant admitted that he cocked the hammer back on the gun again, and pointed it at the back of Re's head. He then stated that Re rolled over or spun around to get the gun and he hit Re with the gun and "left a shell" in Re's head. Appellant later made the statement that he should have cleared everybody else out of the house and called the police himself, explaining that it then could have just been an accidental shooting rather than an aggravated murder.
 {¶ 23} Similar to the situations represented in Jackson andNeely, the only evidence supporting appellant's request for an instruction on reckless homicide as a lesser included offense of aggravated murder, were appellant's own statements to Det. Whitlock in which he claimed the gun had gone off by accident when he hit Re with it. Appellant also points to the testimony of Tom Cottle and argues that Cottle's statement on the night of the shooting that "it was an accident," supports an instruction for reckless homicide.
 {¶ 24} However, at trial, Cottle testified that he made the statement that the shooting was an accident out of fear of appellant. Cottle's testimony also refuted appellant's claim that Re reached for the gun or that appellant hit Re with the gun, causing it to fire, and supported the state's theory that appellant was steady and acting with purpose when he shot Re. The state also produced medical and forensic testimony that demonstrated that appellant was holding the barrel of the gun in direct contact with Re's shirt and within inches of his neck when he shot Re, further refuting appellant's claims that Re spun around or struggled for the gun, causing it to accidentally discharge. The state also produced scientific evidence that the firearm did not have a "hair trigger" or any irregularities which would cause it to discharge accidentally. Given the totality of this evidence, we cannot say that the jury could have reasonably rejected the charge of aggravated murder, accepting instead the lesser-included offense of reckless homicide. We therefore find no error in the trial court's refusal to instruct the jury with regard to the lesser included offense of reckless homicide and appellant's first assignment of error is overruled.
 {¶ 25} Assignment of Error #2:
 {¶ 26} "THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 27} Appellant contends that the evidence presented at trial clearly demonstrated that appellant did not purposely kill the victim, and that his conviction for purposeful, aggravated murder is against the weight of the evidence. We disagree.
 {¶ 28} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v.Ruhlman, Butler App. No. CA2005-05-125, 2006-Ohio-2137, ¶ 5, citing State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. In fact, in order for an appellate court to reverse a conviction in a jury trial on the weight of the evidence, it must do so by the concurrence of all three judges hearing the case. Id., citing Section 3(B)(3), Article IV, Ohio Constitution.
 {¶ 29} While a reviewing court considers the credibility of the witnesses, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," in this case, the jury, as they are in "the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v.Kash, Butler App. No. CA2002-10-247, 2004-Ohio-415, ¶ 25; citingState v. DeHass (1967), 10 Ohio St.2d 230, 231.
 {¶ 30} As demonstrated by the review of the evidence presented above, the state presented sufficient witness testimony and scientific evidence to demonstrate that appellant acted purposely in shooting Re. It is the task of the jury to judge the credibility of the testimony presented and weigh that evidence against appellant's statement that the gun had gone off by accident. We cannot say that the jury clearly lost its way in resolving the conflicts in the evidence or created such a manifest miscarriage of justice as to warrant a new trial. We therefore find that appellant's conviction was not against the manifest weight of the evidence and overrule appellant's second assignment of error.
 {¶ 31} Judgment affirmed.
Walsh and Bressler, JJ., concur.
[1] R.C. 2903.02 "No person shall purposely cause the death of another."
[2] R.C. 2903.04 "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."