OPINION
{¶ 1} Appellant Jared Higgins appeals his conviction, in the Muskingum County Court of Common Pleas, for one count of murder. The following facts give rise to this appeal.
 {¶ 2} On August 6, 2003, at approximately 11:42 p.m., the Zanesville Police Department responded to a shooting on Spangler Drive in the City of Zanesville. Upon arriving at the scene, Patrolman Andy Armstrong discovered the victim, Michael Allen, lying in the middle of the street, bleeding from the back of his head. It was later determined that Mr. Allen died from a gunshot wound to the head. On August 7, 2003, Detective Sergeant Rick Roush filed a complaint, in the Muskingum County Juvenile Court, which alleged that appellant committed the aggravated murder of Michael Allen. Appellant surrendered to the Zanesville Police Department on August 8, 2003.
 {¶ 3} On August 13, 2003, the state filed a motion requesting the juvenile court to transfer jurisdiction to the Muskingum County Court of Common Pleas. A magistrate conducted a hearing on the state's motion on August 22, 2003. Prior to the commencement of the hearing, the state moved to amend the complaint to allege a charge of murder. The juvenile court granted the state's motion. Following testimony, the magistrate concluded he had heard sufficient credible evidence from which to conclude appellant had committed the murder of Michael Allen. The magistrate transferred jurisdiction to the Muskingum County Court of Common Pleas. The juvenile court judge filed a judgment entry on August 27, 2003, adopting the magistrate's decision. Appellant filed objections to the magistrate's decision on September 5, 2003. The juvenile court judge overruled appellant's objections and affirmed the magistrate's decision.
 {¶ 4} Thereafter, on September 17, 2003, the Muskingum County Grand Jury indicted appellant on one count of aggravated murder, with a firearm specification and one count of murder with a firearm specification. Appellant entered pleas of not guilty to both charges on September 24, 2003. On April 12, 2004, appellant filed a motion to dismiss the aggravated murder charge. Following a hearing, the trial court denied appellant's motion. This matter proceeded to trial on September 26, 2004. At trial, appellant testified that on the evening in question, he, Jeremy Smith and Myron Tuttle began drinking at approximately 7:30 p.m. Appellant and Myron Tuttle also smoked marijuana.
 {¶ 5} Subsequently, appellant and his two friends decided to walk to Tuttle's residence so he could get some money from his stepmother. While walking down the street, appellant and his two friends were continuing to drink from a bottle of Brandy. Appellant testified that he was carrying a handgun on his person and had been doing so for approximately two weeks because he had been assaulted by Neil Nesselroad. Following this assault, appellant purchased the handgun from Jeremy Smith for $150. While walking down the street to Tuttle's residence, appellant took the gun out of his waistband and shot it straight up in the air. After shooting the gun, it jammed and appellant gave it to Jeremy Smith to unjam. After doing so, Smith gave the gun back to appellant and appellant put it in his waistband.
 {¶ 6} Appellant and his two friends continued walking and eventually stopped to talk to Tuttle's brother. While stopped, Tuttle threw the bottle of Brandy on the ground, multiple times, in order to break the bottle. This caught the attention of neighbors. Rick Cornell and Wanda Woods yelled at Tuttle. Thereafter, Wanda Woods, Rick Cornell and their son, William Cornell, approached appellant and his friends in the middle of the street. Wanda Woods asked Tuttle why he broke the bottle and Tuttle responded that he "fucking threw it down." William Cornell became upset with this response to his mother and it appeared as if a fight would ensue. At this point, other individuals joined the group in the middle of the street, including the victim, Michael Allen. When Allen joined the group, Jeremy Smith put down his drink and raised his fists to fight Allen. Allen did the same. Allen allegedly swung at Smith. At that point, appellant drew his gun, pointed it at Michael Allen and shot him in the back of the head. Appellant testified the shooting was an accident and that the gun discharged when Michael Allen backed into it with his head. Appellant stated that he did not intend to kill anyone.
 {¶ 7} Following deliberations, the jury found appellant guilty of Count 2 of the indictment, murder with a firearm specification. The jury could not reach a verdict on Count 1, aggravated murder with a firearm specification. The trial court declared a hung jury as to Count 1.
 {¶ 8} On November 1, 2004, at the sentencing hearing, the state moved to nolle Count 1 of the indictment, which the trial court granted. Thereafter, the trial court sentenced appellant to the mandatory sentence of fifteen years to life, along with a consecutive three-year imprisonment for the firearm specification.
 {¶ 9} Appellant filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 10} "I. THE COURT ERRED IN NOT DISMISSING THE AGGRAVATED MURDER CHARGE WHEN THE SAME CHARGE WAS NOT PRESENTED TO THE MUSKINGUM COUNTY JUVENILE COURT.
 {¶ 11} "II. THE COURT ERRED IN FAILING TO INSTRUCT ON THE LESSER INCLUDED OFFENSES OF INVOLUNTARY MANSLAUGHTER, RECKLESS HOMICIDE, FELONIOUS ASSAULT AND NEGLIGENT HOMICIDE.
 {¶ 12} "III. THE COURT ERRED IN PREVENTING THE APPELLANT FROM CONFRONTING STATE WITNESSES REGARDING THEIR PRIOR JUVENILE CRIMINAL RECORDS.
 {¶ 13} "IV. THE COURT ERRED IN NOT ALLOWING A STATE WITNESS WHO HAD ACTUALLY HANDLED AND SHOT THE WEAPON IN QUESTION TO FURTHER TESTIFY THAT IT HAD A `LIGHT TRIGGER' CAPABLE OF EASY FIRING."
 I {¶ 14} In his First Assignment of Error, appellant maintains the trial court erred when it denied his motion to dismiss the charge of aggravated murder on the basis that it was not presented to the Muskingum County Juvenile Court. We disagree.
 {¶ 15} At the hearing on the transfer of jurisdiction, the state amended its complaint and presented evidence only in support of the crime of murder. However, following bind over to the Muskingum County Court of Common Pleas, the grand jury indicted appellant for one count of murder, with a firearm specification, and one count of aggravated murder, with a firearm specification. Appellant argues on appeal that the grand jury did not have the authority to indict him on the aggravated murder charge because the juvenile court did not find probable cause to believe that he committed the crime of aggravated murder.
 {¶ 16} We will not address the merits of this argument as we find it moot. The record indicates the jury did not reach a verdict on the charge of aggravated murder. Tr. Vol. III at 633. In fact, the trial court declared, on the record, that it was a hung jury as to the charge of aggravated murder. Id. Further, at the commencement of the sentencing hearing in this matter, the state moved to nolle the charge of aggravated murder. Tr. Sentencing Hrng., Nov. 1, 2004, at 3. The trial court granted the state's request. Id.
 {¶ 17} Based upon these facts we conclude that if we were to address this assignment of error, we would be issuing an opinion on a matter that is no longer in controversy due to the trial court granting the state's motion to nolle the charge of aggravated murder. We decline to issue an advisory opinion. Although not factually identical, the Twelfth and Ninth District Courts of Appeals reached similar conclusions in cases involving criminal charges in which the juries returned verdicts of not guilty.
 {¶ 18} In State v. Osborne (Oct. 26, 1987), Butler App. No. CA86-03-039, the Twelfth District Court of Appeals held that the jury's not guilty verdict on the aggravated burglary specification rendered the defendant's appeal moot on the issue of whether the trial court properly denied his directed verdict motion. Id. at 4. Similarly, in State v. Price (Jan. 24, 2001), Wayne App. No. 99CA0027, the Ninth District Court of Appeals declined to address whether the trial court properly denied a Crim.R. 29 motion on a charge of aggravated murder where the jury issued a verdict of not guilty on that charge. Id. at 1. Accordingly, because appellant does not challenge the bindover proceedings as it pertains to the count for which he was convicted, we decline to address this argument on appeal.
 {¶ 19} Appellant's First Assignment of Error is overruled.
 II {¶ 20} Appellant contends, in his Second Assignment of Error, the trial court erred when it declined to instruct the jury on the lesser included offenses of involuntary manslaughter, reckless homicide, felonious assault and negligent homicide. We disagree.
 {¶ 21} At trial, the court found as follows concerning appellant's requested jury instructions. First, the trial court concluded negligent homicide and felonious assault are not lesser-included offenses of the charged offenses. Tr. Vol. III at 571-572. Second, the trial court determined the facts of this case did not fall within the scope of the cases warranting an instruction for reckless homicide as to the charged offenses. Id. at 572. Finally, the trial court denied the requested jury instruction on involuntary manslaughter on the basis that the evidence presented at trial did not support the giving of the requested instruction. Id. at 573.
 {¶ 22} When reviewing a court's refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. Statev. Wolons (1989), 44 Ohio St.3d 64, 68. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 23} We begin our analysis of this assignment of error by first addressing the requested jury instructions for negligent homicide and felonious assault. We agree with the trial court's conclusion that neither negligent homicide nor felonious assault are lesser included offenses of murder or aggravated murder. InState v. Glagola, Stark App. No. 2003CA00006, 2003-Ohio-6018, at ¶ 19 and State v. Morris (Nov. 26, 1990), Stark App. No. CA-8088, at 2, we determined that negligent homicide is not a lesser-included offense of murder or aggravated murder. Further, in State v. Nelson (1996), 122 Ohio App.3d 309, 315 and Statev. Holman (Nov. 8, 1977), Licking App. No. 2477, at 7, we determined felonious assault is also not a lesser-included offense of murder or aggravated murder. As such, the trial court did not abuse its discretion when it denied appellant's request to instruct the jury on negligent homicide and felonious assault.
 {¶ 24} However, involuntary manslaughter[1] and reckless homicide[2] are lesser included offenses of aggravated murder and murder. A party is not entitled to an instruction on a lesser included offense unless the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. [Citations omitted.] State v. Anderson, Butler App. No. CA 2005-06-156, 2006-Ohio-2714, at ¶ 10. In making this determination, the court must view the evidence in the light most favorable to a defendant. Id.
 {¶ 25} Further, in State v. Shane (1992),63 Ohio St.3d 630, the Ohio Supreme Court explained that an instruction on a lesser included offense is not warranted every time "some evidence" is presented to support the inferior offense. There must be "sufficient evidence" to "allow a jury to reasonably
reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis sic.) Id. at 632-633. Thus, in order for the trial court to have instructed the jury on involuntary manslaughter or reckless homicide, the evidence at trial must have supported the theory that appellant acted recklessly while not upholding the theory that he acted purposely when he shot Michael Allen.
 {¶ 26} The evidence in the matter currently before the court does not support this conclusion. The only evidence in support of appellant's argument that he acted recklessly came from appellant's own testimony. Appellant testified at trial that he pulled the gun from his waistband after Michael Allen threw a punch at Jeremey Smith. Tr. Vol. III at 532. Appellant had his finger on the trigger and pointed the gun at the back of Michael Allen's head. Id. Appellant stated that the gun came in contact with Michael Allen's head and discharged. Id. Appellant testified that his intention was to make everybody back away so they could leave and go home. Id. Appellant denied ever intending to kill anyone. Id.
 {¶ 27} Despite appellant's testimony that he did not intend to shoot and kill Michael Allen, the evidence at trial established that appellant pulled a loaded gun from his waistband and pointed it at the back of Michael Allen's head. In State v.Goodwin, 84 Ohio St.3d 331, 1999-Ohio-356, the Ohio Supreme Court addressed a similar argument. In the Goodwin case, the defendant stated that he did not intend to kill the victim and that the gun "just went off." Id. at 332. The Supreme Court reviewed the facts of the case and found "[n]o reasonable juror who believed the state's version of the facts surrounding this shooting could have concluded that the killing was not done purposely and with prior calculation and design as that culpable mental state has been construed by this court." Id. at 347.
 {¶ 28} Based upon the testimony presented in the case sub judice, we conclude the trial court did not abuse its discretion when it refused to instruct the jury on the lesser-included offenses of involuntary manslaughter and reckless homicide.
 {¶ 29} Appellant's Second Assignment of Error is overruled.
 III {¶ 30} In his Third Assignment of Error, appellant maintains the trial court erred when it prevented him from confronting certain witnesses regarding their prior criminal juvenile records. We disagree.
 {¶ 31} Specifically, appellant sought to question Myron Tuttle and Jeremy Smith regarding their juvenile delinquency records. Each of these witnesses had been convicted of various crimen falsi crimes such as theft and receiving stolen property. The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the particular case and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the disputed evidence. See State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027, at 1.
 {¶ 32} Ohio Evid.R. 609 addresses impeachment by evidence of conviction. Section (D) concerns juvenile adjudications and provides as follows:
 {¶ 33} "(D) Juvenile adjudications
 {¶ 34} "Evidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly."
 {¶ 35} R.C. 2151.358(H) specifically provides:
 {¶ 36} "Evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding."
 {¶ 37} Based upon Evid.R. 609(D) and the applicable section of the Revised Code, it is clear that prior juvenile adjudications may not be used to impeach the credibility of a juvenile. Appellant cites the following two cases which he claims supports his argument: State v. Cox (1975), 42 Ohio St.2d 200
and Davis v. Alaska (1974), 415 U.S. 308. We do not find these cases persuasive as applied to the facts of the case sub judice because neither case involved the use of a juvenile adjudication to establish untruthful character. Rather, the evidence inDavis was offered to show bias on the part of the prosecution's witness. Davis at 317. The evidence, in Cox, was offered to show specific contradiction in the testimony of the prosecution's witness. Cox at 204.
 {¶ 38} Further, in State v. Pirman (1994),94 Ohio App.3d 203, the Eleventh District Court of Appeals explained that:
 {¶ 39} "A defendant who seeks to cross-examine a juvenile witness with juvenile records must `present some plausible showing' as to a proper purpose and use which would not include an attempt to merely impeach the witness's credibility." Id. at 210.
 {¶ 40} In the matter currently before the court, appellant did not present a plausible showing of a purpose other than to impeach the testimony of Tuttle and Smith. As such, we find the trial court did not abuse its discretion when it refused to permit appellant to question both Tuttle and Smith about their prior juvenile adjudications.
 {¶ 41} Appellant's Third Assignment of Error is overruled.
 IV {¶ 42} Appellant contends, in his Fourth Assignment of Error, the trial court erred when it did not permit Jeremy Smith to testify that he had handled and shot the gun in question and that the gun had a "light trigger" capable of easily firing. We disagree.
 {¶ 43} As in appellant's Third Assignment of Error, we review this argument under an abuse of discretion standard. Because the trial court would not permit this testimony to be presented to the jury, defense counsel proffered what he believed Jeremy Smith would have testified to regarding the trigger of the gun. Specifically, defense counsel stated, "* * * I believe that had the witness been allowed to testify, he would have been asked the question, does the gun, the gun that we are talking about in this case, the one that Jeremy was has testified that he shot before, does it have a hair trigger. He would have said yes." Tr. Vol. II at 450.
 {¶ 44} Appellant maintains this testimony was important for the jury to hear because Jeremy Smith had personal knowledge of the workings of the gun and in his opinion, it had a "hair trigger." Appellant contends this testimony would have supported his testimony that he did not purposely shoot the gun and kill Michael Allen.
 {¶ 45} The trial court explained that it did not permit Jeremy Smith to testify that the gun had a hair trigger because he was not established as an expert. Id. at 449. If a matter falls within the "common knowledge of laymen," the jury is presumed to be knowledgeable about the matter and, therefore, expert testimony would not "assist" the jury. Giannelli, Ohio Evidence Manual (1988) 96-97, section 702.03; Lee v. Baldwin
(1987), 54 Ohio App.3d 188. We do not find whether a gun has a "hair trigger" to be within the common knowledge of most jurors. Accordingly, the trial court did not abuse its discretion when it did not permit Jeremy Smith to testify that the gun had a "hair trigger," even though he was familiar with the gun and had shot it on several occasions. Clearly, to present such testimony to the jury required an expert and Jeremy Smith did not qualify as an expert. Appellant could have retained an expert to present testimony on this issue, but chose not to do so.
 {¶ 46} Appellant's Fourth Assignment of Error is overruled.
 {¶ 47} For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.
Wise, P.J. Gwin, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.
Costs assessed to Appellant.
[1] See State v. Jones (June 8, 1992), Stark App. No. CA-8525, at 3 and State v. Collins, Richland App. No. 2003-CA-0073, 2005-Ohio-1642, at ¶ 127.
[2] See State v. Anderson, Butler App. No. CA 2005-06-156;2006-Ohio-2714, at ¶ 9 and State v. Berry, Cuyahoga App. No. 83756, 2004-Ohio-5485, at ¶ 48.