[Cite as *State v. Jones*, 2016-Ohio-2777.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2015-05-012 |
| | : | O P I N I O N |
| - vs - | | 5/2/2016 |
| | : | |
| TRAVIS D. JONES, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20150036

Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr. 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Travis D. Jones, appeals his felony conviction in the Fayette County Common Pleas Court for domestic violence with two prior domestic violence convictions.  For the reasons that follow, we affirm his conviction.

{¶ 2} On Valentine's Day in 2015, appellant kicked his mother, Julianne Robinson, in the chest and tried to stab her with a knife, and then beat her husband (appellant's

stepfather), Richard Robinson, in the presence of police. Julianne provided police with a written statement alleging appellant assaulted her.

{¶ 3}   By the time of appellant's trial, appellant's mother had recanted her allegations against appellant and changed her story. The trial court called her to the stand as the court's witness and permitted the state to treat her as a hostile witness. Appellant's mother testified that, on the date in question, she "wasn't in a very good" mood due to her "bipolar depression" and the fact that she had been off her medications for seven days resulted in her "terrorizing everybody." She also stated, at one point, she threw appellant's cat against a wall and went after appellant with a hammer. She denied that appellant had shoved her into the door, explaining when appellant and her brother, Walter Aills, took the hammer out of her hand, she fell back into the veneer door, breaking its hinges. According to the mother's new version, she went after appellant again after she had been set down in a chair, this time with a heavy cane, and then grabbed a butcher knife off the kitchen counter. She testified that when appellant and her brother got the knife away from her, she ran out of the door where she saw Detective David Page. Appellant's mother stated she did not see appellant strike his stepfather and only recalls appellant being apprehended by police. She also testified that she was sick on the day in question and did not remember making a written statement.

{¶ 4}   Detective Page testified that upon arrival he saw a female slam open the back door and heard her scream "he's going to kill me," and then saw appellant chasing the female with a knife, which he was holding in a "striking position." The female was later identified as appellant's mother. When appellant made eye contact with Detective Page, he dropped the knife, ignored commands to stop, and ran back into the house. When Detective Page went towards the rear of the house, he saw appellant re-emerge from the house, charge another male in the front yard, and begin to strike him. Detective Page later identified the male that appellant had charged and struck as appellant's stepfather. He further testified

that when he came over to appellant, appellant "already had his hands behind his back[,]" apparently, in the expectation that he would be handcuffed. Detective Page then saw appellant's mother "go over the back of one of [his] officers, Patrolman Jean Boone, now Jean Bowling, and hit [appellant] in the head[.]"

{¶ 5} Patrolman Bowling took the stand and stated that when she arrived at the scene, appellant's stepfather told her that she "better bring more help." When Patrolman Bowling saw appellant run out of the front door of the house, she "yelled for him to stop[,]" but he refused to do so, and instead, ran over to his stepfather, knocked him to the ground, and then started striking him with his fist. She then stated she ran over to appellant and his stepfather where, at first, appellant took a "squared off stance," looking like he was about to strike, but then "just turned around" and said, "go ahead and take me in Ms. Boone." Patrolman Bowling testified that she took hold of appellant's arms, but when she did, appellant's mother jumped on her back in an apparent attempt to strike appellant. Later, when Patrolman Bowling entered the family's home, she found the kitchen in disarray, with couch cushions on the floor, a broken chair, and a bi-fold door that was broken off its hinges. She testified that appellant's mother kept saying "look at what he's done."

{¶ 6} Appellant called one witness to the stand, his uncle, Walter Aills, who testified, on the day in question, appellant's mother was "on a rampage," and that this behavior was normal for her. He stated that when he heard things being broken in the kitchen and went to investigate, he saw appellant's mother and stepfather in an argument, "shoving and slapping each other around." Aills further testified that appellant, who had been sitting in another room, came into the kitchen and grabbed hold of his stepfather. Aills claimed he helped appellant disarm his mother by taking the hammer away from her, but that appellant's mother then picked up a butcher knife and appellant upended a kitchen table trying to get the knife from her. Aills stated he did not see appellant "do anything trying to injure his mother" and it

was normal for appellant's mother and the "whole family" to engage in type of this behavior.

{¶ 7} The jury acquitted appellant on charges of felonious assault, domestic violence, and aggravated menacing against his mother, but convicted him of domestic violence with two prior domestic violence convictions against his stepfather. At appellant's sentencing hearing, the trial court noted that, at the time of the offense, appellant was being supervised on postrelease control. The trial court sentenced appellant to 30 months in prison for his conviction of domestic violence and an additional prison term of two years, six months, and 20 days for violating the terms of his postrelease control, and ordered him to serve both sentences consecutively.

{¶ 8} Appellant now appeals and assigns the following as error:

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE COURT ERRED BY FAILING TO INCLUDE A JURY INSTRUCTION FOR THE LESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE JURY'S VERDICT OF GUILTY AS TO COUNT II WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Assignment of Error No. 3:

{¶ 14} THE COURT ABUSED ITS DISCRETION BY IMPOSING A PRISON SENTENCE FOR A FELONY CONVICTION WHILE THE DEFENDANT WAS ON POST RELEASE CONTROL.

{¶ 15} In his first assignment of error, appellant argues the trial court erred by not instructing the jury on the lesser included offense of minor misdemeanor disorderly conduct. We disagree with this argument.

{¶ 16} Jury instructions are matters that rest within the trial court's sound discretion,

and a trial court's refusal to provide the jury with a requested instruction is reviewed under an abuse-of-discretion standard. *State v. Wyatt*, 12th Dist. Butler No. CA2010-07-171, 2011-Ohio-3427, ¶ 29. A trial court does not abuse its discretion unless its decision is unreasonable, arbitrary, or unconscionable. *State v. Wolons*, 44 Ohio St. 3d 64, 68 (1989).

{¶ 17} A trial court is required to give a requested jury instruction on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." *Wyatt* at ¶ 30. A trial court is not required to give such an instruction "simply because the defendant offers 'some evidence' to establish the lesser-included offense." *Id.* "Instead, there must be 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." (Emphasis sic.) *Wyatt*, quoting *State v. Anderson*, 12th Dist. Butler No. CA2005-06-156, 2006-Ohio-2714, ¶ 11, quoting *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992). In determining whether the instruction was required, the trial court must view the evidence in a light most favorable to the defendant. *Wyatt*, citing *State v. Braylock*, 6th Dist. Lucas No. L-08-1433, 2010-Ohio-4722, ¶ 33, citing *State v. Smith*, 89 Ohio St.3d 323, 331 (2000).

{¶ 18} "Disorderly conduct" is defined in R.C. 2917.11 to prohibit any person from "recklessly caus[ing] inconvenience, annoyance, or alarm to another" by doing any of the acts listed in division (A)(1)-(5) of that section. R.C. 2917.11(A)(1) prohibits persons from "[e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]" Disorderly conduct is a minor misdemeanor, unless the offender engages in certain additional conduct, such as committing the offense in the presence of a law enforcement officer, in which case the offense is elevated to a fourth-degree misdemeanor. R.C. 2917.11(E)(3)(c).

{¶ 19} This court has held that "disorderly conduct under R.C. 2917.11(A)(1) is a

lesser included offense of domestic violence under R.C. 2919.25(A)." *State v. Berry*, 12th Dist. Warren No. CA2006-11-133, 2007-Ohio-7082, ¶ 20, citing *City of Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, ¶ 20 ("minor misdemeanor disorderly conduct under R.C. 2917.11[A][1] is a lesser included offense of domestic violence under * * * R.C. 2919.25[C]"); and *State v. Burgess*, 79 Ohio App.3d 584, 588 (12th Dist.1992). However, even if minor misdemeanor disorderly conduct under R.C. 2917.11(A)(1) is a lesser included offense of domestic violence under R.C. 2919.25(A) and (D)(4), appellant still cannot prevail on his claim, because there was insufficient evidence presented to allow the jury to *reasonably* reject the greater offense of domestic violence and find appellant guilty on the lesser included offense of minor misdemeanor disorderly conduct. *Anderson*, 2006-Ohio-2714 at ¶ 11.

{¶ 20} Appellant contends that an instruction on the lesser included offense of disorderly conduct was warranted in this case because there was no evidence that he caused harm or was attempting to cause harm to his stepfather, since his stepfather did not testify at trial and there was no physical evidence of injury or harm to his stepfather. However, the record shows that the state presented ample evidence to prove that appellant caused his stepfather physical harm.

{¶ 21} The evidence before the jury included testimony from Sergeant Page and Patrolman Bowling who testified that they saw appellant attack his stepfather, taking him to the ground, and striking him repeatedly with his fist. Sergeant Page testified that appellant's stepfather "had a big goose knot that was already red." Patrolman Bowling testified that appellant's stepfather told her at the time of the incident that "he had some leg pain from falling to the ground" and "a contusion on his head." Courts have held that "[e]ven a minor injury * * * constitutes physical harm for purposes of the domestic violence statute[.]" *State v. Maynard*, 4th Dist. Washington No. 10CA43, 2012-Ohio-786, ¶ 30, quoting *State v. Marrero*,

10th Dist. Franklin No. 10AP-344, 2011-Ohio-1390, ¶ 72. Appellant "unquestionably caused physical harm" to his stepfather, and by so doing, "necessarily elevated the seriousness of [his] conduct[,]" and "[t]herefore, the jury could not have reasonably convicted him of disorderly conduct instead of domestic violence." *Maynard*.

{¶ 22} In light of the foregoing, appellant's first assignment of error is overruled.

{¶ 23} In his second assignment of error, appellant argues his conviction for domestic violence with two priors was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 24} When considering a sufficiency-of-the-evidence challenge, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kinsworthy,* 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 52. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "When evaluating the sufficiency of the evidence, this court defers to the trier of fact regarding questions of credibility." *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 25} When considering a manifest-weight-of-the-evidence challenge, an appellate court must review the entire record, weigh the evidence and all reasonable inferences to be drawn from it, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly "lost its way" and created such a "manifest miscarriage of justice" that the conviction must be reversed and a new trial ordered. *State v. Graves,* 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 18. "[W]hile appellate review includes the responsibility to consider the credibility of witnesses and weight given to

the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *Id.* at ¶ 19, quoting *State v. Barnes,* 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. Therefore, an appellate court will overturn a conviction on the basis that it is against the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 26}** R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Former R.C. 2901.22(B), which was in effect at the time of the offense at issue in this case, states that "[a] person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[1]

**{¶ 27}** In support of his claim that his conviction for domestic violence is against the sufficiency and manifest weight of the evidence, appellant highlights the fact that his stepfather, who is the alleged victim in this case, did not testify at trial. He points out that (1) the police took no photographs of his stepfather's alleged injury; (2) two of the four witnesses who testified about the incident did not observe any altercation between appellant and his stepfather; and (3) one of the officers at the scene (Patrolman Bowling) testified that appellant's behavior at the time of the incident seemed "calm" and "relaxed." Appellant

---

1. R.C. 2901.22(B) was amended, effective March 23, 2015, and now provides as follows:

> (B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

concludes by asserting that "there is not one shred of evidence in the record that [he] caused, or intended to cause, physical harm" to his stepfather, and therefore, his conviction is against the both the sufficiency and weight of the evidence. We disagree with this argument.

{¶ 28} Both Sergeant Page and Patrolman Bowling testified they saw appellant assault his stepfather by charging him and knocking him to the ground, and then striking him with his closed fist. Sergeant Page testified he observed redness and swelling on the top of appellant's stepfather's head, which the officer described as a "big goose knot that was already red." Patrolman Bowling testified that, at the time of the incident, appellant's stepfather told her that he had a contusion on his head and indicated he had some leg pain from falling to the ground. Patrolman Bowling did testify appellant "actually relaxed" upon seeing her at the scene, but shortly after that, she testified, from her past experience in dealing with him, appellant was "emotionally charged" when she saw him running out of the house, at which point he charged his stepfather and then struck him with his fist.

{¶ 29} The clear purpose of someone who strikes another with his or her fists is to inflict harm or attempt to inflict harm, which appellant did, as reflected in the testimony of Sergeant Page and Patrolman Bowling. Additionally, it was not necessary for appellant's stepfather, who was the victim in this case, to testify, since there were at least two eyewitnesses, both police officers, who testified to the assault.

{¶ 30} Given the foregoing, appellant's second assignment of error is overruled.

{¶ 31} In his third assignment of error, appellant argues the trial court "abused its discretion" by imposing an additional prison sentence on him, pursuant to R.C. 2929.141(A)(1), for his felony conviction of domestic violence while he was on postrelease control. He asserts the trial court failed to consider the purposes and principles of felony sentencing in R.C. 2929.11(A) and (B), which direct sentencing courts to punish an offender

- 9 -

by using the "minimum sanctions" necessary to achieve the purposes of felony sentencing. He points out the trial court not only failed to employ the minimum sanction available to it in sentencing him under R.C. 2929.141(A), it imposed the maximum sentence against him "without even drawing any guidance from "similarly situated offenses or offenders."  He contends the trial court's sentencing decision is even more troubling given that "there was no victim to consider a victim impact statement from," there was no visible injury to the victim, and his mother was the "primary instigator" of the incident."

{¶ 32} R.C. 2929.141(A)(1) states as follows:

> (A) Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:
>
> (1) In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony. In all cases, any prison term imposed for the violation shall be reduced by any prison term that is administratively imposed by the parole board as a post-release control sanction. A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony. The imposition of a prison term for the post-release control violation shall terminate the period of post-release control for the earlier felony.
>
> (2) Impose a sanction under sections 2929.15 to 2929.18 of the Revised Code for the violation that shall be served concurrently or consecutively, as specified by the court, with any community control sanctions for the new felony.

{¶ 34} Here, the trial court, pursuant to R.C. 2929.141(A)(1), elected to terminate appellant's postrelease control and impose the time remaining thereon, which was two years, six months, and 20 days.  The trial court then ordered appellant to serve his prison term for

violating his postrelease control consecutive to his prison term for his conviction of domestic violence, as the court was required to do, under R.C. 2929.141(A)(1).

{¶ 35} R.C. 2953.08(G)(2) governs all felony sentences. *State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. R.C. 2953.08(G)(2) provides that when hearing an appeal of a trial court's felony sentencing decision, "the appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2) explicitly states that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) provides that an appellate court may take action authorized under that section only if the court "clearly and convincingly" finds that the sentence is "contrary to law." A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of felony sentencing in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences the offender within the permissible statutory range. *State v. Elliott,* 12th Dist. Clermont No. CA2009-03-020, 2009-Ohio-5926, ¶ 10.

{¶ 36} During the pendency of this appeal, the Ohio Supreme Court issued its decision in *State v. Marcum,* Slip Op. Nos. 2014-1825, 2014-2122, __ Ohio St.3d __, 2016-Ohio-1002, ¶ 10 in which the court confirmed that "appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." Later in its decision, the court stated at ¶ 22-23:

> In the final analysis, we hold that R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under "division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code." *See State v. Belew,* 140 Ohio St.3d 221, 2014-Ohio-2964, 17 N.E.3d 515, ¶ 12 (Lanzinger, J., dissenting from the decision to dismiss the appeal as having been improvidently accepted) ("R.C.

2953.08(G)(2) repudiates the abuse-of-discretion standard in favor of appellate review that upholds a sentence unless the court of appeals clearly and convincingly finds that the record does not support the trial court's findings").

* * *

We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

{¶ 37} Here, the trial court properly imposed the maximum sentence on appellant for committing a felony while he was on postrelease control, since appellant violently attacked his stepfather, was convicted by a jury of a felony while he was on postrelease control, and has two prior domestic-violence convictions. Appellant's actions clearly indicate that he is not amenable to community control sanctions, since he cannot control his violent tendencies and aggressions. Additionally, the trial court stated that it considered the statutory provisions in R.C. 2929.11, which discusses the purposes and principles of felony sentencing, and R.C. 2929.12, which lists seriousness and recidivism factors, and the trial court sentenced appellant within the permissible statutory range. *Elliott.* Further, the sentence that the trial court imposed on appellant for his postrelease control violation was authorized under R.C. 2929.141(A)(1). Consequently, appellant's sentence is not clearly and convincingly contrary to law, and the record supports the trial court's decision to sentence appellant as it did. *Marcum* at ¶ 24.

{¶ 38} Accordingly, appellant's third assignment of error is overruled.

{¶ 39} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.