[Cite as *State v. Brown*, 2013-Ohio-1610.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2011-11-207 |
| | : | O P I N I O N |
| - vs - | | 4/22/2013 |
| | : | |
| STANLEY BROWN, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2010-12-1966


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Stanley Brown, #014-974, Lebanon Correctional Institution, P.O. Box 56, Lebanon, Ohio 45036, defendant-appellant, pro se


**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Stanley Brown, appeals his convictions in the Butler County Court of Common Pleas for two counts of rape. For the reasons discussed below, we affirm Brown's convictions.

{¶ 2} On December 15, 2010, Brown was indicted on three counts of rape in violation of R.C. 2907.02(A)(1)(b). The charges arose out of allegations that Brown engaged in fellatio

and vaginal intercourse with his step-daughter, K.G. (born February 7, 1995), on or about the fall of 2003 through the spring of 2004 (count one), on or about the spring of 2004 through the fall of 2005 (count two), and on or about the spring of 2005 through the spring of 2006 (count three) when she was less than 13 years old in Butler County. Count one of the indictment also specified that at the time of the rape, K.G. was less than 10 years of age.

{¶ 3} A jury trial was held in September 2011. At trial, the state presented the testimony of K.G. and K.G.'s school guidance counselor, Angela Bucheit. K.G. testified that in 2003, she was a third grader living with her mother, Brown, and her twin sister in an apartment on Gordon Smith Boulevard in Hamilton, Ohio. K.G. stated that Brown began to ask her to do him "favors," which consisted of him trying to have sex with her. K.G. testified that Brown took her to an abandoned apartment on Gordon Smith Boulevard and forced her to touch his penis and put her mouth on his penis. She also testified that Brown digitally penetrated her vagina and put his penis into her "a little bit" until she started kicking and screaming. After the incident ended, Brown instructed K.G. not to tell her parents or he would hurt them.

{¶ 4} K.G. testified that a second encounter with Brown occurred when she was a fifth grader at Richard Allen Academy. K.G. stated that although she lived with her grandparents, she was visiting her mother at her mother's apartment on Chestnut Street in Hamilton, Ohio while on spring break. K.G. testified that after showering at her mother's apartment, Brown asked her to come to his room and do him a "favor." When K.G. told him "no," he pushed her down on his bed and started to choke her until she put her mouth on his penis.

{¶ 5} K.G. testified that her mother later moved back to an apartment on Gordon Smith Boulevard in Hamilton, Ohio. During one of K.G.'s visits to her mother's apartment,

Brown came into the victim's room and asked her to do him a "favor" again. K.G. stated she put her mouth on Brown's penis.

{¶ 6} K.G. did not report these rapes until March 2010, when she was a sophomore in high school. K.G. explained that during her sophomore year, her health class had a guest speaker from Children's Hospital who discussed child abuse and alcohol abuse. During the course of the guest speaker's presentation, K.G. volunteered to read a card prepared by the speaker that discussed a girl who had become dependent upon drugs and alcohol after remaining silent about being raped. K.G. testified that after reading the card, she "got nervous on the inside" and "was starting to cry." After class, K.G. spoke with the guest speaker and with Bucheit about what had happened with Brown. K.G. testified that Bucheit called the police and she gave a statement to detectives later that day.

{¶ 7} On cross-examination, K.G. admitted that prior to 2010 she had not told her mother, grandparents, sister, or the police about what had happened with Brown, and she had not sought medical attention after the rapes occurred. K.G. acknowledged that she had previously had a good relationship with Brown, that she called him "dad," that they said "I love you" to one another, and that when Brown was in jail from June 2004 to May 2006, she wrote him letters. K.G. denied the defense's allegation that she "made [the] whole thing up," but acknowledged that her trial testimony differed from the statement she gave to detectives in March 2010 and from her December 2010 grand jury testimony. K.G. admitted that she never told detectives that she performed oral sex on Brown or that they had engaged in sexual intercourse. Additionally, she admitted that during her grand jury testimony she had identified different locations where the rapes occurred, including a Travel Lodge in Kentucky, and had described the rapes as involving both vaginal intercourse and oral sex. K.G. explained that she was not lying when she gave her statement to the detectives, when she testified before the grand jury, or when testifying before the jury. Rather, when talking to the

detectives, she gave the events in the order she remembered them and additional details surfaced the more she thought about what had happened to her.

{¶ 8} Bucheit was then called to the stand to testify, over the defense's objections, about the statements K.G. made to her after the guest speaker's presentation at the school. Bucheit testified she spoke with K.G. on March 19, 2010, after K.G. was released from her health class. At this time, K.G. told Bucheit that Brown had inappropriately touched her breasts and vagina, and he had raped her by "put[ting] his thing inside of her." When Bucheit asked K.G. what she meant by that statement, K.G. specified that Brown "put his penis in my vagina." K.G. told Bucheit that it had happened more than once, and one of the times it occurred at an apartment on Gordon Smith Boulevard in Hamilton, Ohio.

{¶ 9} Following Bucheit's testimony, the defense made a Crim.R. 29 motion for acquittal, which was denied by the trial court. Brown took the stand in his own defense and stated that K.G.'s testimony was all lies. He testified that he never digitally penetrated, had oral sex with, or had sexual intercourse with K.G. Brown claimed that since beginning his relationship with K.G.'s mother in 2003, he has never been alone with K.G. – "not even for ten minutes." Brown testified that he had a good relationship with K.G., and when he was in prison from June 2004 to May 2006, he would frequently talk to K.G. and receive "happy" letters from her. At trial, Brown presented a letter, dated January 1, 2009, that had been written by K.G.'s mother. At the end of the letter K.G. had written a short message to Brown, which stated:

> P.S. Hey daddy! I ghott [sic] a boyfriend and his name is Jamonta (JT)!! He so [sic] sweet. Ha. Don't loose [sic] your head daddy. I love you.

{¶ 10} A friend and former neighbor of Brown's, Wilma Buck, testified at trial that she did not believe K.G. had ever stayed overnight with Brown without K.G.'s mother also being present. Brown's niece, Bridgett Brown, testified that K.G. had spent "quite a few" weekends

- 4 -

at her house over the years so that K.G. could visit with Bridgett's children. Bridgett stated that she had the opportunity to see K.G. and Brown interact and that K.G. was "ecstatic" about having a dad in her life. She described K.G. and Brown's relationship as that of a father and daughter.

{¶ 11} Following closing arguments, the defense requested jury instructions for the lesser-included offenses of attempted rape and gross sexual imposition. The trial court denied the requests and provided a jury instruction for the offense of rape by fellatio for each count of the indictment. The jury returned a guilty verdict on counts one and two of the indictment, but acquitted Brown of the rape specified in count three of the indictment. With respect to its determination on count one of the indictment, the jury found that at the time of the rape, K.G. was less than ten years of age. Brown was sentenced to life with the possibility of parole in ten years. Brown now appeals, raising five assignments of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} K.G.'S TESTIMONY WAS IMPROPERLY BOLSTERED BY HEARSAY STATEMENTS.

{¶ 14} In his first assignment of error, Brown argues the trial court erred in permitting Bucheit to testify about the statements K.G. made to her on May 19, 2010. Brown contends that the statements K.G. made to Bucheit were inconsistent with her trial testimony as K.G. never mentioned to Bucheit that she performed oral sex on Brown. Brown also argues that Bucheit's testimony was not used to rebut a charge of improper motive or recent fabrication, as required by Evid.R. 801(D)(1)(b), but rather were used to prove the truth of K.G.'s testimony.

{¶ 15} The admissibility of relevant evidence is left to the sound discretion of the trial court. *State v. Atkinson*, 12th Dist. No. CA2009-10-129, 2010-Ohio-2825, ¶ 7. "Absent an abuse of discretion, as well as a showing that appellant suffered material prejudice, an

- 5 -

appellate court will not disturb a trial court's ruling as to the admissibility of evidence." *Id.* An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Ford*, 12th Dist. No. CA2009-01-039, 2009-Ohio-6046, ¶ 36.

{¶ 16} Evid.R. 801(D) defines certain out-of-court declarations as non-hearsay. Under Evid.R. 801(D)(1)(b) an out-of-court statement is not hearsay if "[t]he declarant testifies at trial * * * and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." This rule "permits the rehabilitation of a witness whose credibility has been attacked by an express or implied charge that he recently fabricated his story or falsified his testimony in response to improper motivation or undue influence." *State v. Smith*, 12th Dist. No. CA2009-02-038, 2010-Ohio-1721, ¶ 102; *State v. Grays*, 12th Dist. No. CA2001-02-007, 2001 WL 1302551, *5 (Oct. 29, 2001). In order to be admissible, the prior consistent statements must have been made before the existence of any motive or influence to falsify testimony. *State v. Williams*, 12th Dist. No. CA2007-04-087, 2008-Ohio-3729, ¶ 12. "In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation." *Smith* at ¶ 103.

{¶ 17} After reviewing the record, we find that the trial court properly admitted K.G.'s statements to Bucheit pursuant to Evid.R. 801(D)(1)(b). K.G.'s statements to Bucheit that Brown had raped her by "put[ting] his thing inside of her" and "put[ting] his penis in [her] vagina" were consistent with K.G.'s trial testimony that Brown digitally penetrated her vagina and put his penis into her "a little bit." *See* R.C. 2907.01(A) ("'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between

persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however light, is sufficient to complete vaginal or anal intercourse.").

{¶ 18} Furthermore, during defense counsel's cross-examination of K.G., the defense expressly challenged whether K.G.'s trial testimony was fabricated. The defense specifically asked K.G., "[I]sn't it the truth that you made this whole thing up? * * * [Y]ou're telling these ladies and gentlemen [of the jury] * * * something [that] is not true?" Given the defense's challenge of K.G.'s trial testimony regarding the events that transpired between her and Brown, the trial court was within its discretion to allow rehabilitation through the introduction of a prior consistent statement pursuant to Evid.R. 801(D)(1)(b).

{¶ 19} Brown's first assignment of error is, therefore, overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO GIVE A LESSER-INCLUDED OFFENSE INSTRUCTION.

{¶ 22} In his second assignment of error, Brown argues the trial court erred in refusing to give jury instructions for the lesser-included offenses of attempted rape and gross sexual imposition. Brown contends that given K.G.'s "wide-ranging version" of events, the jury could have found him not guilty of rape but guilty of either attempted rape or gross sexual imposition had the proper jury instructions been provided.

{¶ 23} Jury instructions are matters left to the sound discretion of the trial court. *State v. Tucker*, 12th Dist. No. CA2010-10-263, 2012-Ohio-139, ¶ 23. Therefore, this court reviews the trial court's decision refusing to provide the jury with a requested jury instruction for an abuse of discretion. *State v. Cruz*, 12th Dist. No. CA2012-03-059, 2013-Ohio-215, ¶ 18. As noted above, an abuse of discretion implies that the court's decision was unreasonable,

arbitrary, or unconscionable, and not merely an error of law or judgment. *Ford*, 2009-Ohio-6046 at ¶ 36.

{¶ 24} "A jury instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense." *Cruz* at ¶ 19. However, a jury instruction is not warranted simply because the defendant offers "some evidence" to support the inferior offense. *State v. Anderson*, 12th Dist. No. CA2005-06-156, 2006-Ohio-2714, ¶ 11. "There must be 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser-included * * * offense.'" (Emphasis sic.) *Id.*, quoting *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992).

{¶ 25} Brown was found guilty of rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Attempted rape and gross sexual imposition are lesser-included offenses of rape. *See State v. Williams*, 74 Ohio St.3d 569, 578 (1996); *Cruz* at ¶ 16. R.C. 2923.02(A) defines the crime of attempt and provides that "[n]o person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2907.05(A)(4) defines the crime of gross sexual imposition and provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶ 26} The pertinent difference between rape, or attempted rape, and gross sexual imposition are the acts that constitute "sexual conduct" versus the acts that constitute "sexual contact." R.C. 2907.01(A) defines sexual conduct as:

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

Sexual contact, on the other hand, is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 27} We find that the trial court did not abuse its discretion in refusing to instruct the jury on the lesser-included offenses of gross sexual imposition and attempted rape. In reaching this determination, we are guided by the Supreme Court's decision in *State v. Johnson*, 36 Ohio St.3d 224 (1988). In *Johnson*, the defendant was charged with multiple counts of rape of his minor daughters. *Id.* at 226. Although it was clear that sexual contact had also occurred between the defendant and the minor victims, the state chose to narrowly focus its case on the rape charges. *Id.* at 226-227. The defendant denied being involved in the rapes, claiming that the victims' stories were wholly fabricated. *Id.* at 227. Because no physical evidence of the rapes existed, the state's entire case depended on the credibility of the victims' testimony as to penetration. *Id.* In considering whether the defendant was entitled to a jury instruction for the lesser-included offense of gross sexual imposition, the Supreme Court stated the following:

> A criminal defendant is not entitled to a jury instruction on gross sexual imposition as a lesser included offense of rape where the defendant has denied participation in the alleged offense, and the jury, considering such defense, could not reasonably disbelieve the victim's testimony as to "sexual conduct," R.C. 2907.01(A), and, at the same time, consistently and reasonably believe her testimony on the contrary theory of mere "sexual contact," R.C. 2907.01(B).

*Id.* at paragraph two of the syllabus. Accordingly, the Supreme Court determined the trial court did not abuse its discretion in refusing to instruct the jury on the lesser-included offense of gross sexual imposition. *Id.* at 228.

{¶ 28} As in *Johnson*, the state in the case sub judice chose to narrowly focus its prosecution on the rape charges, and the entire case depended upon the credibility of the victim's testimony as to the act of fellatio.[1] At trial, K.G. consistently testified that Brown made her perform fellatio. K.G. stated Brown "made me touch his penis and he made me put my mouth on it and then he made me basically move my mouth on it." Although K.G. testified about other instances when Brown put his penis inside her vagina or required her to touch his penis, this testimony did not support an instruction for gross sexual imposition. Such testimony was given in addition to K.G.'s testimony regarding multiple instances of fellatio, and the other acts were not relevant to whether Brown engaged in sexual conduct constituting rape by fellatio. *See Johnson* at 227-228; *Cruz*, 2013-Ohio-215 at ¶ 23. K.G.'s testimony about putting her mouth on Brown's penis clearly fit within the definition of sexual conduct as required by the rape statute, rather than mere sexual contact as required for gross sexual imposition.

{¶ 29} Furthermore, Brown's defense was that the acts K.G. testified to never actually occurred. Brown argued that he did not participate in any act with K.G. that constituted rape. At no time did he challenge K.G.'s inability to differentiate between mere touching or sexual contact and the act of fellatio. Accordingly, pursuant to *Johnson*, Brown was not entitled to a jury instruction on the lesser-included offense of gross sexual imposition. He was also not entitled an instruction on the lesser-included offense of attempted rape as K.G.'s testimony

---

1. At trial, the state moved to amend the Bill of Particulars so that it was "consistent with [K.G.'s] testimony, which would include the fellatio on all three counts of the indictment." The trial court granted the state's request, noting that "the defendant is only being charged and can only be convicted as charged on the act of fellatio, not vaginal intercourse, or attempted vaginal intercourse. * * * Counts One, Two, and Three will be limited to the act of fellatio."

indicated that for each charge of rape, Brown had successfully completed the act of rape by placing his penis in K.G.'s mouth.

{¶ 30} Accordingly, Brown's second assignment of error is overruled.

{¶ 31} Assignment of Error No. 3:

{¶ 32} MR. BROWN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 33} In his third assignment of error, Brown argues that the jury "lost its way" when it convicted him of two counts of rape. Brown contends that K.G.'s testimony was not reliable as "her story kept changing" and there was no credible evidence on which the jury could have based their verdict.

{¶ 34} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Furthermore, "[a] unanimous concurrence of all three judges on

the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial." *Id.*, citing *Thompkins* at 389.

{¶ 35} Brown was found guilty of two counts of rape in violation of R.C. 2907.02(A)(1)(b), which provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." The sexual conduct Brown was convicted of was fellatio, which is defined as "a sexual act in which the mouth or lips come into contact with the penis." R.C. 2907.01(A); *State v. Speakman*, 12th Dist. No. CA2010-06-013, 2011-Ohio-3430, ¶ 12.

{¶ 36} After reviewing the entire record, weighing inferences and examining the credibility of the witnesses, we cannot say that Brown's convictions for rape were against the manifest weight of the evidence. K.G.'s testimony demonstrated that at the time of the rapes, she was not married to Brown and she was less than 13 years of age. Furthermore, K.G.'s testimony that she was born in February 1995, and that the first rape occurred in 2003 is evidence that the rape specified in count one of the indictment occurred when she was only 8 or 9 years old. Her statements that Brown "made me put my mouth on [his penis] and then he made me basically move my mouth on it" while at an abandoned apartment on Gordon Smith Boulevard and while at her mother's residence on Chestnut Street is evidence that the sexual conduct of fellatio occurred.

{¶ 37} Although Brown denied having any sexual involvement with K.G., claiming that he was never alone with K.G. and that her testimony was all lies, it is clear that the jury found K.G.'s testimony credible. While Brown was able to point out inconsistencies in K.G.'s trial testimony from her testimony before the grand jury and from her statement to detectives, K.G. explained that she was had not been lying when giving any of her statements, but that additional details had surfaced the more she thought about what had happened to her as a

child. The jury in this case was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part, or none of their testimony. *State v. Woodward*, 12th Dist. No. CA2011-02-036, 2011-Ohio-6019, ¶ 35. Here, the jury obviously found K.G.'s testimony to be more credible and chose to believe her version of the events over Brown's proffered version. "It is well-established that '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'" *State v. Bates*, 12th Dist. No. CA2009-06-174, 2010-Ohio-1723, ¶ 11, quoting *State v. Bromagen*, 12th Dist. No. CA2005-09-087, 2006-Ohio-4429, ¶ 38.

{¶ 38} Accordingly, we find that Brown's convictions for rape were not against the manifest weight of the evidence, and his third assignment of error is overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} MR. BROWN'S TRIAL WAS FUNDAMENTALLY UNFAIR BECAUSE THE COURT TAINTED THE JURY VENIRE BY TELLING IT THAT INNOCENT PEOPLE ARE NOT BROUGHT TO TRIAL.

{¶ 41} In his fourth assignment of error, Brown argues that the trial court "poisoned the jury venire by instructing it that innocent people are not brought to trial," and he contends that the court's error was so egregious that it rose to the level of structural error. Specifically, Brown challenges the trial court's comment to the jury during the voir dire process, whereby the court explained the grand jury process and stated, "[a]nd that is a procedural safeguard to make certain that innocent people aren't drug into the courtrooms and required to hire an attorney and possibly go through all the rigors involving that." The state contends, however, that Brown has taken the judge's comment out of context and that the judge's instructions, when reviewed in their entirety, demonstrate that the jury was consistently instructed that Brown was presumed innocent and that the state had the burden of proving otherwise at trial.

**{¶ 42}** "A structural error is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 50, quoting *Arizona v. Fulminante*, 449 U.S. 279, 310, 111 S.Ct. 1246 (1991). "Such errors permeate '[t]he entire conduct of the trial from beginning to end' so that the trial cannot 'reliably serve its function as a vehicle for determination of guilt or innocence.'" *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 17, quoting *Fulminante* at 309-310. Structural errors can be found only in a "very limited class of cases." *Perry* at ¶ 18.

**{¶ 43}** In determining whether the trial court erred in instructing the jury during the voir dire process, we look at the instructions it gave as a whole. *State v. Gilbert*, 12th Dist. No. CA2010-09-240, 2011-Ohio-4340, ¶ 63; *State v. Clay*, 7th Dist. No. 08 MA 2, 2009-Ohio-1204, ¶ 159. "[T]he judge's shorthand references to legal concepts during voir dire cannot be equated to final instructions given before the jury's [final] deliberations." *Clay* at ¶ 160, citing *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 204. Furthermore, "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Clay* at ¶ 159, citing *State v. Price*, 60 Ohio St.2d 136 (1979), paragraph four of the syllabus.

**{¶ 44}** In the present case, we do not find structural error as the trial court did not prejudice Brown or otherwise err in instructing the jury during the voir dire process. The record reflects that the jury pool was informed numerous times that Brown was presumed innocent and the state had the burden of proving otherwise by proof beyond a reasonable doubt. For example, the trial court stated:

> THE COURT: * * * I want to go through something that really runs to the heart of the criminal trial. You may recall from your civics lessons a couple years ago when you were in school that in a criminal case *it is the State of Ohio who bears the burden of proof*. And you've all heard that *the defendant is presumed innocent*. And those words just roll off the tongue, and I don't know that a lot of people, unless - - unless they are sitting where

you are sitting, ever really thought about what that means. And what that means in plain and simple language is that *the State of Ohio must prove each and every element of the offense by proof beyond a reasonable doubt.*

\* \* \*

*Now, the State has to present the proof. The defendant is presumed innocent.* If the State doesn't present that proof, if the defendant is presumed innocent, then the defendant must be?

JURORS: Acquitted.

THE COURT: Acquitted. Thank you very much. So, is it necessary, the question that may be running through your mind, is it necessary that the defendant present any evidence? And of course not. *The defendant is not required to present any evidence because he is presumed innocent, and the State has the burden of proof.*

\* \* \*

THE COURT: All right. Let's go through another little exercise here. This defendant is seated here in this courtroom because the grand jury was called, and of course, that is another protection that our founding fathers built into the system to make certain that only those who the evidence would show are probably guilty are required to stand trial. And so, the grand jurors met and they listened to evidence. They listed to evidence that was presented by the prosecutor without the defendant present.

The defendant wasn't there. The defendant's attorney wasn't there. The defendant's attorney was not allowed to ask those witnesses any questions. The defendant was not permitted to, obviously, make a statement since he wasn't there, or present any evidence because he wasn't there. And that is a procedural safeguard to make certain that innocent people aren't drug into the courtrooms and required to hire an attorney and possibly go through all the rigors involving that. *But the fact that the defendant is seated here in this courtroom and charged with one or more offenses cannot be considered by you as potential jurors as any indication of the defendant's guilt.*

It kind of goes back to my point earlier, *the defendant is presumed innocent.*

(Emphasis added).

- 15 -

{¶ 45} As the record indicates, there was only one instance in which the trial court's statements could be viewed as possibly commenting on the defendant's guilt or innocence. Rather, the instruction as a whole informed the jury pool that Brown was presumed innocent. We do not find this one comment was an error, let alone an error that "permeate[d] the entire conduct of the trial from beginning to end." *See Perry* at ¶ 17.

{¶ 46} Even if the trial court had erred in stating that the grand jury process ensures that "innocent people aren't drug into the courtrooms and required to hire an attorney and possibly go through all the rigors involving that," the error was mitigated by the court's numerous comments regarding the presumption of innocence, the state's burden of proof, and the obligation to find the defendant not guilty upon insufficient proof. *See Clay* at ¶ 160; *State v. Zobel*, 5th Dist. No. 96AP060051, 1997 WL 220295, *6-7 (Mar. 27, 1997) (finding that any error during the voir dire portion of the proceedings was harmless as the "jury instructions as a whole conveyed to the jury the presumption of innocence and the necessity of finding guilty beyond a reasonable doubt").

{¶ 47} Brown's fourth assignment of error is, therefore, overruled.

{¶ 48} Assignment of Error No. 5:

{¶ 49} TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S IMPROPER INTRODUCTORY EXPLANATION THAT TAINTED THE JURY POOL.

{¶ 50} In his fifth assignment of error, Brown argues that his trial counsel was ineffective for failing to object to the trial court's comment during voir dire that procedural safeguards exist to "make certain that innocent people aren't drug into the courtrooms and required to hire an attorney and possibly go through all the rigors involving that." We disagree.

{¶ 51} To prevail on his ineffective assistance of counsel claim, Brown must demonstrate that (1) his trial counsel's performance in failing to object to the court's comment during the voir dire process fell below an objective standard of reasonableness and (2) that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052 (1984). Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* at 694. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶ 52} As discussed above, there is no indication that Brown was prejudiced by the trial court's comment during the voir dire process. Rather, the record indicates that the trial court properly instructed the jury, numerous times, regarding the presumption of Brown's innocence, the state's burden of proof, and the jury's obligation to find Brown not guilty upon insufficient proof. The jury clearly understood the trial court's instructions and followed such instructions as it acquitted Brown on count three of the indictment, demonstrating that it was not "poisoned" by the trial court's comment during the voir dire process.

{¶ 53} Accordingly, we find that Brown was not denied effective assistance of trial counsel. Brown's fifth assignment of error is, therefore, overruled.

{¶ 54} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.