[Cite as *State v. Whitt*, 2018-Ohio-1257.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2017-05-061 |
| Plaintiff-Appellee, | : | CA2017-05-065 |
| | : | O P I N I O N |
| - vs - | | 4/2/2018 |
| | : | |
| DANIEL W. WHITT, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16CR032271

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Craig A. Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Daniel Whitt, appeals his conviction in the Warren County Court of Common Pleas. For the reasons detailed below, we affirm.

{¶ 2} On August 5, 2016, at approximately 9:30 p.m., Janet and Gary Bowling, their two grandchildren, and Janet's brother were at their home in South Lebanon. Most of the family was in the family room watching the opening ceremony of the Summer Olympics.

Janet was in the master bedroom.

{¶ 3}   Janet was not in her room for long when she heard a loud bang outside the sliding glass door of her bedroom.  The sound was so loud that the family believed they had heard a gunshot.  Janet and Gary went to the kitchen where they observed a man, covered in blood and panicked, banging on the kitchen door.  According to Gary, Whitt was "beating the hell out of the door with something, I don't know what it was.  I thought he was going to break the glass, saying they're going to shoot me, they're going to shoot me."

{¶ 4}   Though Gary offered to help Whitt, Gary explained that he could not come inside.  Gary testified that he told Whit "you're not getting in here is what I told him.  You're not getting in here.  I said, I'll get you some help, but you're not getting in here."  Whitt ignored Gary and instead repeated cries to "let me in, let me in," while continuing to beat of the door with an object.

{¶ 5}   Meanwhile, Janet went into the family room to call 911. Despite being told that he was not permitted to enter the house, Whitt continued to bang on the glass of the kitchen door and windows.  At some point, Whitt managed to open the front storm door and continued loudly banging on the main door.  While Whitt continued to beat on the door, he continued to yell "let me in, they're after me, they're coming to get me."

{¶ 6}   While Whitt continued to make attempts to gain entry, Gary was on the phone with 911.  Whitt was banging on the windows and doors so hard that Gary and Janet were "very surprised" the glass held and Whitt was unable to gain entry.  Believing that Whitt was possibly armed and afraid that Whitt was going to harm them, Gary grabbed an aluminum baseball bat for protection in the event that Whitt was able to gain entry to the residence.

{¶ 7} Law enforcement personnel were not able to arrive on-scene until approximately 12 minutes after they were dispatched to the scene.  When law enforcement

arrived, they approached Whitt with their guns drawn and ordered him down on the ground. Whitt initially did not comply, but officers were able to get Whitt on the ground and handcuffed. At the time, Whitt was observed to be covered in blood and "tweaking." Deputy Noah Billmaier described Whitt as constantly moving and unable to sit still. Deputy Billmaier testified that Whitt's behavior was commonly seen in individuals who were on narcotics.

{¶ 8} Whitt was transported to the hospital for treatment. That night and the following morning, law enforcement surveyed Gary and Janet's property. During their investigation, law enforcement observed blood covering the driveway, on vehicles, on the front porch, tables and chairs, on the doors, windows, and backyard. In addition, furniture on the front porch had been broken and chairs tossed aside. Law enforcement also recovered a broken ashtray on the porch with another piece of the ashtray in the driveway, connected by a trail of blood.

{¶ 9} Deputy Kenneth Palmer spoke with Whitt in the emergency room. Deputy Palmer also described Whitt as "real jittery, very talkative, talking a mile a minute" and "couldn't keep still." During their conversation, Whitt admitted that he had ingested "ice," which is a slang term for methamphetamine. Whitt also recalled the incident at the Bowling residence and stated that he had brought the ashtray with him from the apartment complex across the street and he had cut himself on the broken shards, thus causing the bloody scene.

{¶ 10} On August 29, 2016, Whitt was indicted for attempted trespass into a habitation and criminal damaging. The case proceeded to a jury trial on March 23, 2017. Following the introduction of all evidence and deliberation by the jury, Whitt was found guilty of both counts. The trial court sentenced Whitt to eleven months in prison to be served consecutively to another prison term imposed against him in a separate matter. Whitt now

appeals, raising a single assignment of error for review:

{¶ 11} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS FOR ATTEMPTED TRESPASS INTO A HABITATION, ORC 2923.03(A) & OF CRIMINAL DAMAGING, ORC 2906.03(A)(1), A MISDEMEANOR OF THE SECOND DEGREE.

{¶ 12} In his sole assignment of error, Whitt argues that his convictions are based on insufficient evidence and against the manifest weight of the evidence. We disagree.

{¶ 13} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 14} A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-

08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 15} Whitt was convicted of committing criminal damaging in violation of R.C. 2909.06(A)(1) and attempted trespass into a habitation in violation of R.C. 2923.02(A) and R.C. 2911.12(B). R.C. 2909.06 states:

> (A) No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:
>
> (1) Knowingly, by any means[.]

In addition, R.C. 2911.12(B) provides, "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶ 16} Pursuant to R.C. 2923.02(A), which defines criminal attempt, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." In other words, a criminal attempt is complete when a defendant's acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. *State v. Clements*, 12th Dist. Butler No. CA2009-11-277, 2010-Ohio-4801, ¶ 20. A "substantial step," as defined by the Ohio Supreme Court, involves conduct which is "strongly corroborative of the actor's criminal purpose." *Id.*, quoting *State v. Group*, 98 Ohio St.3d 248, 261 (2002).

{¶ 17} In the present case, it is undisputed that the victims were present at the time that Whitt was banging on the windows and doors seeking entry into the residence. Nevertheless, Whitt argues that the jury lost its way "regarding the distinction between *using force to gain entrance* versus *using force to gain help*." (Emphasis in original.) Whitt does not make any particular argument as to the criminal damaging conviction, but to include it in

his assignment of error on sufficiency and weight grounds.

{¶ 18} Following review, we find Whitt's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The state presented evidence that Whitt was attempting, by force, to enter the Bowlings' residence by violently banging on the door and windows and screaming that he was in some form of imminent danger. Based on Whitt's demeanor, the Bowlings explained that they were concerned that Whitt was a threat to their safety and the safety of their grandchildren. While Whitt was screaming "they're going to shoot me," there was evidence that law enforcement observed Whitt "tweaking" and he later admitted to having consumed methamphetamine. Whitt's argument that he was only seeking help and therefore is not guilty of attempted trespass is without merit. Furthermore, as to the criminal damaging conviction, the Bowlings testified about the damage caused to their property and photographic evidence corroborates their testimony. The jury, acting as trier of fact, was in the best position to resolve factual questions. Accordingly, we find Whitt's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶ 19} Finally, although Whitt does not separately raise this issue in an assignment of error, he also argues that the trial court erred in instructing the jury on the element of force and that the error was structural. A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. *State v. Brown*, 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 42. The concept behind the structural error analysis is that "certain errors are so fundamental that they obviate the necessity for a reviewing court to do a harmless-error analysis." *State v. Hill*, 92 Ohio St.3d 191, 199 (2001). Structural errors can be found only in a "very limited class of cases" and amounts to a "defect affecting the framework within which the trial proceeds, rather than

simply an error in the trial process itself." *Brown* at ¶ 42.

{¶ 20} In the present case, the trial court instructed the jury that "[f]orce, means any violence, compulsion, effort, or constraint exerted by any means upon or against a person or a thing to gain entrance." Contrary to Whitt's argument, this instruction is appropriate and consistent with the statutory definition of force in R.C. 2901.01(A)(1). *See also State v. Lane*, 50 Ohio App.2d 41, 45-48 (10th Dist.1976). As a result, Whitt was not prejudiced by any error in the jury instructions, much less "structural error."

{¶ 21} Following a thorough review of the record, we find Whitt's arguments on appeal are without merit. Whitt's sole assignment of error is overruled.

{¶ 22} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.