[Cite as *State v. Martin*, 2023-Ohio-2631.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| STATE OF OHIO, | : | |
| :--- | :--- | :--- |
| Appellee, | : | CASE NO. CA2023-01-008 |
| | : | O P I N I O N |
| - vs - | | 7/31/2023 |
| | : | |
| JOSEPH P. MARTIN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-05-0619


Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Law Office of John H. Forg, and John H. Forg, III, for appellant.


**PIPER, J.**

{¶1} Appellant, Joseph Martin, was indicted on one count of trespass in a habitation. The matter proceeded to a jury trial. Following deliberations, the jury found Martin guilty, and the trial court later sentenced him to community control. [1]

---

1. Martin was also indicted on one count of criminal trespass. However, the trial court granted Martin's Crim. R. 29 motion for acquittal on that charge. That charge involved Martin's alleged attempt to enter a different residence just before entering Danielle Armstrong's home.

**Facts Leading to Indictment**

{¶2}   Danielle Armstrong had just finished giving her young daughter a bath when she saw Martin on her front porch.  Armstrong was acquainted with Martin, but barely so.  Armstrong recalled that about two or three years earlier her neighbors had come over to her house and Martin came with them.

{¶3}   Armstrong opened the door and asked Martin what he needed.  Martin asked if her husband was home.  When she said no, Martin asked to come in.  Armstrong told Martin that he could not enter, but Martin came in anyway.  Armstrong testified:

> And I told him no, he could not come into my house.  He didn't hurt me, but he, like, shoved [past] me into my house, which knocked into my arm.  And I'm like dude, you got to go; you cannot be here.  He was not listening to me.

> At one point, he took his hoodie off and started pacing around my house, telling me that these people are out to get him; they had guns; they were coming to shoot him.  He asked me to call the police.  I really didn't know what to do at that point.

Armstrong stated that Martin remained in her home for 35 to 40 minutes and continued exhibiting strange behavior.  He paced around the home shirtless and complained that people were after him.  Armstrong recalled:

> He was pacing around like I said, saying that somebody was out to shoot him, get him; he needed help; he needed me to call the police.  That's really all he kept saying.  He kept asking me for my phone.  I just kept asking him to get out and leave; he couldn't be there.

Despite Martin's insistence, Armstrong did not observe anyone chasing Martin or posing a threat to Martin.  Simply put, Armstrong did not believe Martin's story.  She saw no one outside lurking about.

{¶4}   Armstrong called her neighbor, Donald Barrow, to help get Martin out of her house. Barrow ran over to help—he testified that he had known Martin almost his entire life and had been good friends with him.  Barrow likewise did not observe anyone looking for

Martin, and in fact saw no one in the vicinity. Barrow stated "[i]t seemed like he was scared of something, but I never seen nothing out there." According to Barrow, Martin "was asking, you know, if I'd help him get him out of there; if I had a gun; that people are trying to shoot him * * *. And I was like, I don't have no gun with me." Based upon his familiarity with Martin, having known him for decades, Barrow testified that Martin was "definitely intoxicated on something." After talking to Martin for 15 to 20 minutes, Barrow was able to trick Martin into leaving by having Martin believe that someone was going to be coming into the house.

{¶5} Shortly thereafter Martin was arrested by Deputy Curtis Cook who found Martin hiding on property of a commercial establishment. Deputy Cook observed that Martin was cooperative but described him as disheveled and dirty, wearing no shirt. He further noted that Martin was making incoherent statements and simply "wasn't making any sense."

{¶6} Martin did not deny entering Armstrong's residence but stated that he did so because he was afraid for his safety and was attempting to seek help. Martin testified that a man named "Terry" had attempted to intimidate him with a pistol two days earlier "because * * * one of his friends had stolen my car, and he was trying to deter me from going into court and testifying on the car theft."[2]

{¶7} On cross-examination, the assistant prosecutor inquired about specific details of the supposed threat. Martin stated that he saw the man hanging out at his friend's house through a "little gap in this fence, and he was there - - he was back here. There was his truck, and he was - - that's why I was scared to death that he was there * * *."

{¶8} Few other details were provided. Martin agreed that "this person" was not

2. During his testimony Martin named the individual who supposedly threatened him. One time it was "Terry Wainman" and on another occasion it was "Terry Wayne."

directly outside Armstrong's home. Martin vaguely stated that he ran away "once he spoke to me." When asked by the assistant prosecutor if he was under a constant threat, Martin replied:

> A. I don't know. I just know that he'd (indiscernible) with a pistol before, and I'd seen him, and he told me to come here. and I ran. That's - -
>
> Q. So this day you're not even saying he threatened you with a pistol. He just said, come here, correct?
>
> A. Yeah.
>
> Q. Okay. So all he said was, come here?
>
> A. Yeah.

{¶9} Following the testimony and closing arguments, the trial court gave its jury instructions, which included an instruction on the affirmative defense of duress. As noted above, the jury found Martin guilty of trespass in a habitation. Martin timely appeals his conviction for trespass in a habitation, raising a single assignment of error for review.

**Issue on Appeal**

{¶10} THE TRIAL COURT ERRED IN CONVICTING MARTIN OF TRESPASS IN A HABITATION WHEN THE MANIFEST WEIGHT OF THE EVIDENCE ESTABLISHES [sic] THAT HE ACTED UNDER DURESS.

{¶11} Martin argues his conviction is against the manifest weight of the evidence. A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the

evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶12} Martin was convicted of trespass in a habitation in violation of R.C. 2911.12(B). That provision states "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶13} On appeal, Martin argues that he proved that he entered the Armstrong residence under duress. In so doing, he references his own testimony that he was afraid of "Wayne" and "terrified" that "Wayne was stalking him." He claims that he did not enter Armstrong's residence for an improper purpose and that he was only acting out of fear of "immediate and impending bodily harm" by "Wayne." Martin suggests the evidence was "uncontested" and concludes that the jury's verdict must be against the manifest weight of the evidence.

{¶14} As we have stated previously, duress is an affirmative defense which must be proven by the preponderance of the evidence. *State v. Hall*, 12th Dist. Madison No. CA2007-02-005, 2008-Ohio-1889, ¶ 61; *State v. Johnson*, 12th Dist. Warren No. CA2015-09-086, 2016-Ohio-7266, ¶ 137.[3] "A defendant is said to be under duress when he is compelled to commit a crime by another under threat of imminent death or serious bodily injury, and the force compelling the defendant remains constant, controlling the will of the unwilling defendant during the entire time he commits the act, and is of such a nature that he cannot safely withdraw." *Hall* at ¶ 61.

---

3. "The preponderance of the evidence means that amount of evidence on one side which outweighs or is of greater probative value than that on the other." *State v. Laghaoui*, 12th Dist. Warren No. CA2017-06-098, 2018-Ohio-2261, ¶ 14.

{¶15} After reviewing the record, we find Martin's conviction for trespass in a habitation is supported by the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt. While Martin claims he was under duress, it is well established that a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶16} In the present case, the jury heard evidence regarding Martin's strange and erratic behavior that challenged his credibility. Martin repeatedly claimed, without any basis in reality, that people with guns were after him. Armstrong testified that Martin's demeanor made him unbelievable. Moreover, neither Armstrong nor Barrow saw anyone looking for, or stalking, Martin. Barrow, in fact, believed that Martin was "definitely intoxicated on something." When he was arrested, Deputy Cook similarly observed that Martin "wasn't making any sense." Contrary to Martin's suggestion otherwise, the evidence that he was acting under duress was not "uncontested." The witnesses may have observed Martin acting in a frenzied state, but Martin's explanations were not reasonable in light of the totality of the circumstances. Circumstantial evidence did not support the idea that either an individual or a group of people were out to get Martin. A defendant's belief he is acting under duress must be reasonable. *State v. White*, 1st Dist. Hamilton No. C-190262, 2020-Ohio-1231, ¶ 19. The jury clearly found that Martin failed to prove his affirmative defense by a preponderance of the evidence and the jury, as trier of fact, was in the best position to make that determination. *State v. Whitt*, 12th Dist. Warren Nos. CA2017-05-061 and CA2017-05-065, 2018-Ohio-1257, ¶ 18.

## Conclusion

{¶17} Following a thorough review of the evidence, we find Martin's conviction is not

against the manifest weight of the evidence. Weighing the evidence and all reasonable inferences, we find the trier of fact did not lose its way creating a manifest miscarriage of justice. *Morgan*, 2014-Ohio-2472 at ¶ 34. Accordingly, Martin's sole assignment of error is overruled.

**{¶18}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.